LINDA CLAXTON, CA Bar No. 125729
linda.claxton@ogletree.com
SAMUEL KNECHT, CA Bar No. 314693
samuel.knecht@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
400 South Hope Street, Suite 1200
Contra Costa, CA  90071
Telephone:   213-239-9800
Facsimile:   213-239-9045

Attorneys for Defendant
PREMIUM RETAIL SERVICES, INC..

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEROSKA GAY, on behalf of himself and others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>PREMIUM RETAIL SERVICES, INC., an entity of unknown form; and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No. 3:23-cv-3963<br><br>**DEFENDANT PREMIUM RETAIL SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Notice of Related Cases; Declarations of [Richburg]; [Claxton] in Support of Removal]<br><br>Complaint Filed:   June 28, 2023<br>Trial Date:   None<br>District Judge:   Hon. _____<br>                   Courtroom __, _____ |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF GEROSKA GAY AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendant Premium Retail Services, Inc. ("Defendant"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Contra Costa to the United States District Court for the Northern District of California pursuant to 28 U.S.C. Sections 1332, 1441(a) and 1446. The grounds for removal are as follows:

**I.    BACKGROUND**

1. On June 28, 2023, plaintiff Geroska Gay ("Plaintiff"), on behalf of himself and all others similarly situated, filed the lawsuit entitled *Geroska Gay v. Premium Retail Services, Inc.* ("Defendant")*; and DOES 1-50, inclusive*, Case No. C23-01599 in the Superior Court for the County of Contra Costa.

2. Plaintiff served the Complaint on Premium Retail Services, Inc. on July 8, 2023. Declaration of Linda Claxton ("Claxton Decl.") ¶ 2, Ex. A. In accordance with 28 U.S.C. § 1446(a), true and correct copies of "all process, pleadings, and orders" served on Defendant in this action are attached to the Claxton Declaration as **Exhibit A**.

3. The Complaint asserts class action claims for: (1) failure to pay minimum wages; (2) failure to pay wages and overtime under Labor Code section 510; (3) meal period liability under Labor Code section 226.7; (4) rest break liability under Labor Code section 226.7; (5) failure to pay vacation wages; (6) failure to comply with Labor Code sections 245 *et seq*. and 246; (7) reimbursement of necessary expenditures under Labor Code section 2802; (8) failure to comply with Labor Code section 2751; (9) violation of Labor Code section 226(a); (10) violation of Labor Code section 221; (11) failure to keep required payroll records under Labor Code sections 1174 and 1174.5; (12) penalties pursuant to Labor Code section 203; (7) violation of Business and Professions code sections 17200 et seq.

4. As set forth more fully below, based on the allegations of the Complaint and other evidence collected by Defendant, this Court has subject matter jurisdiction under the Class Action

Fairness Act, 28 U.S.C § 1332(d).  Therefore, this action may be removed to this Court, pursuant to 28 U.S.C. § 1441.

5. In accordance with 28 U.S.C. § 1446(d), Defendant will promptly serve this notice of removal on Plaintiff's counsel and file a copy with the clerk of the Superior Court for the County of Contra Costa.

## II.  PROCEDURAL GROUNDS FOR REMOVAL ARE SATISFIED.

6. Removal is timely, as this Notice is filed within thirty (30) days of Defendant being served with the summons and complaint.  28 U.S.C. § 1446(b).

7. Under 28 U.S.C. §§ 84(c) and 1441(a), venue is proper in the United States District Court for the Northern District of California because this Court embraces the Superior Court for the County of Contra Costa, where this action was pending.

8. Defendant filed its Answer to Plaintiff's Complaint in Contra Costa County Superior Court on July 31, 2023.  A copy of Defendant's Answer filed in the Superior Court is attached to the Claxton Declaration as **Exhibit B**.  Defendant is not aware of any further proceedings or filings regarding this action in that court.  Defendant needs not secure consent from the "Doe" defendant prior to removal.  28 U.S.C. § 1453(b) ("[S]uch action may be removed by any defendant without the consent of all defendant."); *see, e.g.*, *United Comput. Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (explaining that the consent requirement "does not apply to" "unknown" parties).

9. The removing party need only provide a "short and plain statement of the grounds for removal" and need not submit evidence unless and until the opposing party challenges the factual allegations in the notice of removal.  *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." (citation omitted)).

## III.  THIS COURT HAS JURISDICTION OVER THIS ACTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT.

10. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), which grants federal district courts jurisdiction over putative class actions with more than 100 class

members where the aggregate amount in controversy exceeds $5 million and any member of the class of plaintiffs is a citizen of a state different from any defendant. As set forth below, this action satisfies each of the requirements of section 1332(d)(2) for original jurisdiction under CAFA.

11. Support for CAFA jurisdiction in this action is based both on the allegations of the Complaint and Defendant's investigation of its business records.[1] *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013) (A defendant "may remove to federal court when it discovers, based on its own investigation, that a case is removable.").

### A. This Is A Covered Class Action.

12. This action meets CAFA's definition of a class action, which is "any civil action filed under Fed. R. Civ. P. 23 or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. §§ 1332(d)(1)(B), 1435(a) & (b). Plaintiff purports to bring this action on behalf of himself and "all others similarly situated" and identifies the class of persons on whose behalf this action is filed as "all current and former Employees within the State of California who, at any time four (4) yeas prior to the filing of this lawsuit, are or were employed as non-exempt, hourly employees by Defendants." Compl. ¶ 1. Plaintiff brings these claims pursuant to California's class action statute, Cal. Civ. Proc. Code § 382, and alleges that "there is a well-defined community of interest in the litigation and [the] proposed class is easily ascertainable." Compl. ¶ 31.

### B. The Proposed Class Exceeds 100 Members.

13. Plaintiff seeks to represent all similarly situated employees subjected to the alleged illegal pay practices. Compl. at 1.

14. Plaintiff alleges that "while the precise number of class member[s] has not been determined at this time, Plaintiff is informed and believes that Defendants employ or, during the time period relevant to this lawsuit, employed more than 100 individuals who were employed by

---

[1] In making its good faith calculations of the size of the purported class and the amounts-in-controversy being sought by the Complaint, Defendant does not concede or admit, in any fashion, that any claims for such amount, or any amounts, have legal or factual merit, or that the persons on behalf of which such claims are asserted could properly be certified as members of a class under Fed. R. Civ. P. 23, and reserves all rights and defenses to such claims.

Defendant's [sic] within the state of California." Compl. ¶ 32. Based on a review of Defendant's business records, 7,806 individuals were employed as hourly employees in California by Defendant at some time during the period from June 28, 2019 until July 26, 2023 ("Putative Class Members" or "PCM's"). Claxton Decl. ¶ 8. Accordingly, for purposes of removal, the aggregate number of putative class members as defined by the Complaint is greater than 100 persons, as required by 28 U.S.C. § 1332 (d)(5)(B).

### C. The Parties Are Minimally Diverse.

15. The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the citizen of at least one class member is diverse from the citizenship of at least one defendant. 28 U.S.C. § 1332(d)(2)(A).

16. For removal purposes, citizenship is measured both when the action is filed and removed. *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

#### i. Plaintiff is a Citizen of California

17. For diversity purposes, a person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *Marroquin v. Wells Fargo, LLC*, 2011 U.S. Dist. LEXIS 10510, at *3-4 (S.D. Cal. 2011); *Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides *prima facie* case of domicile); *see Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise).

18. The Complaint alleges that Plaintiff is, and at all times relevant to this action was, a resident of California. Compl, ¶ 2. Accordingly, Plaintiff is a citizen, resident and domiciliary of the State of California.

### ii. Defendant Is Not a Citizen of California.

19. For diversity purposes, "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see also Hertz Corp.*, 559 U.S. 77 at 78, 80-81 (2010) (explaining the phrase principal place of business in 28 U.S.C. § 1332(c)(1) refers to the place where a corporation's high level officers direct, control and coordinate the corporation's activities, *i.e.*, its nerve center, which will typically be found at its corporate headquarters).

20. Defendant Premium Retail Services, Inc. is incorporated in Delaware. Declaration of Sonya Richburg ("Richburg Decl."), ¶ 4. Its headquarters and its executive officers and senior management personnel, at all relevant times were and still are, as of the date of this removal, located in Chesterfield, Missouri. *Id*. Based on the location of the officer positions above, corporate decisions are made either individually, or as a management team, in Chesterfield, Missouri. *Id*.

21. Because Defendant is incorporated in Delaware, with its principal place of business in Chesterfield, Missouri, under 28 U.S.C. § 1332(c)(1), it is a citizen of Delaware and Missouri.

22. Minimal diversity is established because Plaintiff is a citizen of California and Defendant is not; Defendant is citizen of Delaware and Missouri. Removal is therefore proper under 28 U.S.C. § 1332(d). *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

### D. The Aggregate Amount In Controversy Exceeds $5 Million.

23. Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2), (d)(6); *see also Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). The amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of the defendant's liability." *Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin*, 574 U.S. at 89. To determine the amount in controversy, the Court must assume that the allegations in the operative pleading are true and that a jury will return a verdict for the plaintiff on all such claims. *See Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D.

Cal. 2012) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.") (emphasis and internal quotation marks omitted).

24. Plaintiff does not specifically plead the amount of damages claimed. Where this is the case, a defendant need only make a *prima facie* showing that it is more likely than not that the amount in controversy exceeds $5 million. *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis omitted). A "removing defendant is not obligated to 'research, state, and prove plaintiff's claims for damages.'" *Id.* at 1204-05 (emphasis omitted). Defendant may rely on "reasonable assumptions" in calculating the amount in controversy for removal purposes. *Arias*, 936 F.3d at 922. Furthermore, in cases where statutory penalties are sought, as is the case here, "district courts…of California have looked to the statutory maximum…in determining whether the jurisdictional requirements of CAFA have been met." *Korn,* 536 F. Supp. 2d at 1205.

25. "[I]n wage-and-hour cases, the amount in controversy turns on the frequency of the alleged violations of California labor laws." *Hayes v. Salt & Straw, LLC*, 2020 WL 2745244, at *3 (C.D. Cal. May 27, 2020). If the complaint is ambiguous, as here, defendants are entitled to make reasonable assumptions concerning the number of violations. *See, e.g.*, *Arias*, 936 F.3d at 922. An assumed violation rate of one violation per week is frequently considered reasonable where the plaintiff alleges a pattern and practice of conduct. *E.g.*, *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (C.D. Cal. Dec. 3, 2019) (noting that "other courts within the Ninth Circuit have accepted a rate of one violation per work week as an acceptable basis for calculating the amount in controversy" and accepting same); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *7 (C.D. Cal. May 9, 2018) (same); *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("Where. . . the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws. . . such an allegation supports a defendant's assumptions that every employee experienced at least one violation once per week."); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) ("Given the allegations. . . that the violations took

place 'at all material times,' one violation per week on each claimed basis is a sensible reading of the alleged amount in controversy, as pleaded by Plaintiff.").

26. Based on Plaintiff's allegations in the Complaint, evidence collected by Defendant, and Defendant's reasonable assumptions concerning violations derived from the allegations in the Complaint, the aggregate amount in controversy from the putative class allegations satisfies the jurisdictional threshold. *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (finding in wage and hour class action that defendant established amount in controversy by a preponderance of the evidence where defendant's calculations "were relatively conservative, made in good faith, and based on evidence wherever possible"). The Complaint seeks unpaid wages including overtime wages, interest on wages, civil and statutory penalties, restitution, liquidated damages, compensatory damages including unreimbursed expenditures, reasonable attorneys' fees, and costs of suit on thirteen causes of action brought under a multitude of different labor statutes for each member of the proposed class. *See* Compl. at pp.24-26 ("Prayer for Relief").

27. Conservatively, Defendant estimates that Plaintiff's Complaint places at least the following amounts in controversy:

- Unpaid overtime wages (second causes of action): $5,263,605
- Failure to provide meal periods (third cause of action): $3,509,070
- Failure to provide rest periods (fourth cause of action): $3,509,070
- Non-compliant wage statements (ninth cause of action): $1,129,300
- Final wages not timely paid (twelfth cause of action): $18,041,059
- **Total Estimated amount in controversy:** $12,660,273

1. <u>Plaintiff's Second Cause of Action for Failure to Pay Overtime Wages Places At Least $5,263,605 In Controversy.</u>

28. Plaintiff's Second Cause of Action seeks unpaid overtime wages for time allegedly worked but not compensated. Compl. ¶¶ 48-54. Specifically, Plaintiff alleges that Defendant failed to pay all overtime wages to him and the proposed class, "including time off the clock such as the uncompensated time included [sic] the time Employees worked off-the-clock during meal periods." Compl. ¶ 49. Plaintiff further alleges that "Defendants did not pay Plaintiffs and Employees the

correct overtime rate for the recorded overtime hours they generated." Compl. ¶ 50.

29. As a result, Plaintiff alleges that he and the proposed class members are entitled to recover "… the full amount of all of their unpaid wages and overtime compensation, with interest, plus their reasonable attorneys' fees and costs." Compl. ¶ 54.

30. The statute of limitations for a claim seeking unpaid overtime wages is three years. Cal. Civ. Proc. Code § 338. This is extended to four years due to Plaintiff's UCL claim. *See Sullivan*, 51 Cal. 4th at 1206; *Maravilla v. Rosas Bros. Constr., Inc.*, 401 F. Supp. 3d 886, 901 (N.D. Cal. 2019) (allowing plaintiff to recover an additional year's worth of unpaid wages not otherwise recoverable under Cal. Lab. Code § 1194 based on UCL claims).

31. The Complaint does not allege the number of violations that occurred between June 28, 2019 to the present, or the amount of unpaid wages allegedly owed to Plaintiff or the PCM's. Due to Plaintiff's allegation of a pattern and practice of failing to compensate employees for all time worked, Defendant may reasonably base its amount in controversy calculations on an estimate that each class member was not compensated for one hour of overtime wages per week. *See, e.g., Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (finding reasonable Defendant's assumption that the class members were not compensated for one hour of minimum wages per work week where plaintiff alleged a "pattern and practice" of wage abuse); *Soto v. Greif Packaging, LLC,* 2018 WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018) (finding allegation that defendant failed to pay minimum wage for all hours worked on a "consistent and regular basis" sufficient to support estimate of one hour per week per class member); *Francisco v. Emeritus Corp.*, 2017 WL 2541401, at *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendant's assumption of one minimum wage and overtime violation per workweek to be reasonable."); *Feao v. UFP Riverside, LLC,* 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) (approving of defendant's "measured" assumption that "each class member worked only one unpaid hour of overtime and missed only one hour of minimum wage work per work week"); *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011) (allegation of "consistent overtime work" justified defendant's "reasonable and conservative" assumption that each class member was entitled to one hour of overtime per week).

32. Plaintiff further alleges that the failure to pay overtime wages alleged in the Second Cause of Action constitutes unlawful business acts and practices within the meaning of Business and Professions Code Section 17200. Comp. ¶ 110. The statute of limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued"); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-179 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the underlying claims have shorter statutes of limitation).

33. Based on a review of its business records, Defendant is able to estimate the number of weeks that each individual employee worked during the class period, estimate each potential class member's hourly rate of pay, and estimate each employees overtime rate (1.5 times the hourly rate of pay). Claxton Decl. ¶ 11. Assuming Plaintiff and the class members are owed one additional hour of overtime compensation per week, Defendant can estimate the unpaid overtime wages allegedly owed to each individual employee.[2]

34. From its employment records, Defendant is able to make this calculation for each of the 7,806 PCM's in order to estimate each individual employee's allegedly unpaid overtime wage. Aggregated together, the total of these allegedly unpaid wages works out to $5,263,605.

   2. <u>Plaintiff's Third and Fourth Causes of Action For Failure to Provide Meal and Rest Periods Places Approximately $7,018,140 In Controversy.</u>

35. Plaintiff's Third Cause of Action seeks premium wages for Defendant's alleged failure to provide all legally compliant meal periods. Compl. ¶¶ 55-59. His Fourth Cause of Action seeks premium wages for Defendant's alleged failure to provide all legally compliant rest periods. Compl. ¶¶ 60-64. Specifically, he alleges that Defendant consistently required PCM's to work through their breaks and to take late or short breaks, failed to provide PCM's all of their breaks, and

---

[2] Unpaid overtime wages owed: (work weeks for individual employee) x (one unpaid overtime hour per week) x (1.5 x (standard rate of pay for individual employee)) = unpaid overtime wages owed to individual employee. Once this calculation is complete for each potential class member, the individual calculations can be aggregated to determine the total unpaid overtime wages in controversy.

1  failed to compensate employees one hour of pay for each time a compliant meal or rest period
2  was not provided. Compl. ¶¶ 57-58; 62-63. He seeks a premium in the amount of one hour of pay
3  for each workday that a meal or rest period was not provided. Compl. ¶¶ 59; 64.

4  36. Plaintiff further alleges that the failure to provide meal period premiums alleged
5  in the Third and Fourth Causes of Action constitutes unlawful business acts and practices within
6  the meaning of Business and Professions Code Section 17200. Comp. ¶ 110. The statute of
7  limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208 ("Any action to enforce
8  any cause of action pursuant to this chapter shall be commenced within four years after the cause
9  of action accrued"); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-179
10 (2000) (the four-year statute of limitations applies to any UCL claim, notwithstanding that the
11 underlying claims have shorter statutes of limitation).

12 37. The Complaint does not allege the number of meal or rest periods not provided to
13 Plaintiff or the proposed class members during the statute of limitations period for which
14 premium pay is allegedly due.

15 38. Based on a review of Defendant's business records, between June 28, 2019 and
16 July 26, 2023, 7,806 PCM's worked approximately 236,301 workweeks (Claxton Decl. ¶ 8).
17 These PCM's received an estimated average base hourly rate of $15.00. (Claxton Decl. ¶ 7).

18 39. Assuming, *arguendo*, the truth of Plaintiff's allegations, PCM's are entitled to
19 recover at least $3,509,070 for unpaid meal period premium pay and at least $3,509,070 for unpaid
20 meal period premium pay, as follows: assuming a conservative twenty percent (20%) violation
21 rate for both missed first meal periods and rest periods (1 missed meal period per week and 1
22 missed rest period per week): $14.85 (estimated average base hourly rate for PCM's during the
23 four-year period) x 236,301 (workweeks during the applicable four-year period) x 2 (2 missed
24 meal/rest periods per week).

25 40. The foregoing meal and rest period assumptions are well within the range of up to
26 50-60% generally accepted by this Court as a reasonable conservative assumption when
27 calculating the amount in controversy for CAFA purposes. *See, e.g., Stanley v. Distribution*
28 *Alts., Inc.*, No. EDCV172173AGKKX, 2017 WL 6209822, at *2 (C.D. Cal., Dec. 7, 2017)

(accepting assumed violation rates of "three missed rest breaks, and three missed meal breaks per week" where the complaint offered no guidance as to the frequency of the alleged violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (60% violation rate was "conservative"); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (violation rate of 50%); *Mendoza v. Savage Servs. Corp.*, No. 219CV00122RGKMAA, 2019 WL 1260629, at *2 (C.D. Cal., Mar. 19, 2019) (holding in a case involving the same Plaintiffs' counsel that California district courts "routinely apply a 20% violation rate—that is, one missed meal and rest period per work week—for meal and rest period premiums"); *Mortley v. Express Pipe & Supply Co.*, No. SACV 17-1938-JLS-JDE, 2018 WL 708115, at *4 (C.D. Cal., Feb. 5, 2018) (finding defendant's assumption that class members missed two meal periods and two rest periods each per week based on allegations of "a company-wide policy and/or practice of understaffing" was reasonable).

41. Thus, Plaintiff's Third and Fourth Causes of Action place at least $7,018,140 in controversy.

### 3. Plaintiff's Ninth Cause of Action For Non-Compliant Wage Statements Places Approximately $1,129,300 In Controversy.

42. Plaintiff's Ninth Cause of Action seeks penalties under California Labor Code section 226(a) for failure to furnish complete and accurate wage statements. Compl. ¶¶ 83-89.

43. Plaintiff's claim for wage statement penalties is wholly derivative of his claims for unpaid minimum, overtime, and premium wages. As such, it puts at issue every wage statement for every pay period during the 1-year statutory period from April 20, 2022 to the present. See, e.g., *Gipson v. Champion Home Builders, Inc.*, No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable based on reasonable assumption that class members suffered at least one violation of meal or rest break violations per pay period); *Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (same)). Section 226(e) provides penalties for inaccurate wage statements as follows: the "greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent

pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)[.]"

44. There were a total of 12,946 wage statements issued from 1 year before the date of complaint filing to July 26, 2023. Assuming that all wage statements were deficient, the amount in controversy is $1,129,300.[3]

45. Thus, Plaintiff's Ninth Cause of Action places at least $1,129,300 in controversy.

### 4. Plaintiff's Twelfth Cause of Action For Final Wages Not Timely Paid Places Approximately $18,041,059 In Controversy.

46. Plaintiff's Twelfth Cause of Action seeks penalties under California Labor Code § 203 for failure to timely pay wages due at termination. Compl. ¶¶ 98-102. Specifically, Plaintiff alleges that Defendant failed to pay all wages earned and unpaid prior to separation of employment to the "numerous Employees no longer employed." Compl. ¶ 99-100.

47. As a result, Plaintiff alleges that he and the proposed class members are entitled to recover penalties pursuant to California Labor Code § 203. Compl. ¶ 102. An employer that willfully fails to pay all wages due at termination within the required time is subject to a penalty whereby the employee's wages continue to accrue for up to 30 days from the due date until back wages are paid or an action is commenced. Cal. Lab. Code § 203.

48. The applicable statute of limitations for a claim seeking Labor Code section 203 penalties is three years (from June 28, 2020 to the present). Cal. Lab. Code § 203; Cal. Civ. Proc. Code § 338.

49. The Complaint does not allege the number of violations that occurred between June 28, 2020 and the present. Instead, Plaintiff alleges that "[n]numerous Employees are no longer employed by Defendants [and that] Defendants failed to pay [all of] these Employees" their final wages. Compl. ¶ 99-100. Additionally, Plaintiff relies on his other allegations to support his claim that he and the proposed class members did not receive all wages owed to them upon termination. See Compl. ¶ 98-101. If Plaintiff's other claims are found to be true, all class members terminated more than thirty (30) days ago are entitled to 30 days' waiting period wages under Labor Code section

---

[3] *See, e.g., Lucas*, 2018 WL 2146403, at *8 (calculating penalties under section 226(e))

203.

50.   PCM's would be owed 240 hours of additional compensation at their hourly rate of pay – the equivalent of 30 days' of work.  *See Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *8 (finding "reasonable" defendant's assumption that putative class members did not receive final wages for the full 30-day period under which penalties may accrue."); *Long v. Destination Maternity Corp.*, 2016 WL 1604968, at *9 (S.D. Cal. Apr. 21, 2016) (finding that Defendant's assumption that final wages went unpaid for the full thirty days is reasonable where plaintiff alleges that defendant failed to pay final wages and still had not paid plaintiff all wages).

51.   Of the putative class, approximately 5,086 employees were no longer employed with Defendant within three years prior to the filing of the complaint on June 28, 2023.  These individuals' estimated hourly rate of pay was $14.78.  Claxton Decl. ¶ 9.  Using this data, Defendant can determine the amount of waiting time penalties owed to each individual employee under Labor Code section 203. The amount in controversy totals $18,041,059 for these employees ($14.78 x 240 hrs (8 hrs/day x 30 days) x 5,086).

52.   Thus, Plaintiff's Twelfth Cause of Action places approximately $18,041,059 in controversy.

### E.   No Exception Applies to Defeat CAFA Jurisdiction.

53.   Neither CAFA's "local controversy" nor its "home state" exceptions apply to this case.  For the home state exception to apply, all primary defendants must be citizens of the state in which the case is filed.  28 U.S.C. § 1332(d)(B); *see also Corsino v. Perkins*, 2010 WL 317418, at *5 (C.D. Cal. Jan. 19, 2010).  Similarly, for the local controversy exception to apply, at least one defendant must be a citizen of California, and that defendant's conduct must form a significant basis for the claims asserted by the proposed plaintiff class.  28 U.S.C. § 1332(d)(4)(i)(II).  Defendant is not a citizen of California, so neither exception applies.

## IV.   RESERVATIONS OF RIGHTS.

54.   By removing this matter, Defendant does not waive and, to the contrary, reserve any rights they may have, including, without limitation, all available arguments and affirmative defenses. Defendant does not concede that class certification is appropriate or that Plaintiff is entitled to any

13                                         Case No.  3:23-cv-3963
DEFENDANT PREMIUM RETAIL SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT
56510193.v1-OGLETREE

recovery whatsoever. Should the Court or opposing counsel request additional information, evidence, and/or calculations to demonstrate that this Action places at least $5 million in controversy, Defendant reserves the right to refine the methodologies used here and calculate the amount in controversy with greater precision, which may significantly increase the result. In the event that Plaintiff files a request to remand, or the Court considers remand *sua sponte*, Defendant respectfully requests the opportunity to submit additional argument and/or evidence in support of removal.

## V. CONCLUSION

55. WHEREFORE, Defendant respectfully requests that its Notice of Removal be deemed good and sufficient and for this Court to exercise subject matter jurisdiction over this removed action.

DATED: August 7, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Linda Claxton
Linda Claxton
Attorneys for Defendant
PREMIUM RETAIL SERVICES, INC..